The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Kim L. Cramer and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award except for some minor modifications to Finding of Fact (15).
 *********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties through a Pre-trial agreement, or otherwise at the hearing before Deputy Commissioner Cramer as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, such that the Commission has jurisdiction over the parties and of the subject matter.
2. An Employer-Employee relationship existed between plaintiff and defendant-employer at the time of plaintiff's injury.
3. All parties have been correctly designated, and there is no question as to mis-joinder or non-joinder of the parties.
4. There are no third party defendants or cross claimants. Security Storage Company of Raleigh is a duly-qualified self-insurer with Key Risk Management Services, Inc. acting as its servicing agent.
5. The dates of the two events which are the subject of this claim are 22 June 1994 and 19 July 1994. On 21 June 1994, the fume hoods were decontaminated. On 22 June 1994, the hoods were moved. The alleged incident at the trailer occurred on 19 July 1994.
6. Plaintiff contends that the issues to be tried are the following:
 (a) Has plaintiff sustained injuries by accident as a result of the 22 June 1994 and 19 July 1994 incidents?
 (b) Has plaintiff sustained psychological or physical disorders as a result of his compensable injuries by accident on 22 June and 19 July 1994, and if so, to what compensation is he entitled?
 (c) Is plaintiff entitled to payment for ongoing medical expenses related to his compensable injuries?
7. Defendant contends that the issues to be tried are the following:
 (a) Whether plaintiff suffered a compensable occupational disease on June 22 and 19 July 1994 while working for defendant-employer?
 (b) If so, to what benefits, if any, is plaintiff entitled?
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections raised by counsel at the depositions of Dr. Scott Spillmann, Dr. Dennis Darcey, Dr. Thomas Gualtieri, and Dr. Sheldon Chase are ruled upon in accordance with the provisions of the law and the Opinion and Award in this case.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a male who was 43 years of age on the date of hearing before Deputy Commissioner Cramer. He has completed some college courses, such that he could be considered a sophomore.
2. In October, 1993, plaintiff began working for defendant as a driver. He made 4 or 5 trips to Glaxo while working for defendant.
3. On 22 June 1994, plaintiff was part of a crew assigned to Glaxo to move some biological safety cabinets, which were also referred to during testimony as "fume hoods." These safety cabinets contain HEPA filters which remove particulates so the air is sterile. These filters trap only particulates and not gases.
4. Prior to the moving of safety cabinets, they are decontaminated using paraformaldehyde and ammonium bicarbonate. First, paraformaldehyde is heated to release formaldehyde gas. The ammonium bicarbonate is then heated to neutralize the formaldehyde. The bi-product, a salt particulate, is then wiped from the cabinets. This procedure kills all biological microbes, and the decaying biological matter may give off a very pungent odor which would not be harmful. Testing is done to be sure no harmful gases remain. This decontamination procedure was used on the safety cabinets at issue on 21 June 1994, the day before plaintiff was involved in moving them.
5. On 22 June 1994, when plaintiff was involved in moving the cabinets, someone assisting in the move plugged in the electrical unit of one of the cabinets, turning the fan on. An odor was released, and plaintiff started gagging and ran out into the hallway. Plaintiff had some temporary mild respiratory distress for about 10 minutes. He did not seek any medical attention.
6. On 19 July 1994, plaintiff again returned to Glaxo. The trailer involved in the July 19 incident had been empty since 12 May 1994. On 18 July 1994, two technicians spent about 6 hours in the trailer, repairing and taping the plastic liner. The technicians did not complain of fumes or any adverse effects from the time spent in the trailer. After they completed their work it was inspected by Jyl Burgener, biological safety officer for Glaxo.
7. Also on 18 July 1994, Burgener used a Drager pump to test the trailer for the presence of formaldehyde and ammonia, which tests were negative. After all work had been completed, she closed up and locked the trailer. On the morning of 19 July 1994, prior to 8 a.m., Burgener unlocked the trailer and again tested for formaldehyde and ammonia using the Drager pump. Again, she did not detect the presence of either chemical. She closed and locked the trailer. Burgener did not wear protective clothing or a mask while in and around the trailer on 18 July and 19 July 1994.
8. On the morning of 19 July 1994, around 9 a.m., plaintiff was standing 10 to 15 feet away from the trailer when two co-workers unlocked it and opened the doors. Plaintiff noticed some fumes and backed up to get farther away from the trailer. About 10 minutes later plaintiff still noticed the smell and felt a burning and choking in his throat. He was taken to the medical clinic at Glaxo.
9. At the Glaxo medical clinic, plaintiff was examined by Julia Lambeth, R.N. around 9:30 a.m. Upon examination, she found no evidence of respiratory distress. Plaintiff's lungs were clear with no wheezing or rales. At 11:25 a.m., Ms. Lambeth noted plaintiff was resting comfortably and by 11:45, plaintiff said he "felt like I did when I came to work." At 12:15 p.m., plaintiff exited the clinic to smoke a cigarette. Plaintiff returned to work in the early afternoon. Although he returned to the clinic around 3 p.m. with sore throat complaints, his throat appeared normal and he was not coughing or otherwise in respiratory distress.
10. Plaintiff worked the next day, and continued to work for defendant until mid-October, 1994. On 19 October 1994, plaintiff first saw Dr. Dennis Darcey, a physician at Duke, with a specialty in occupational medicine, and particularly chemical exposures. Plaintiff complained of a multitude of symptoms which plaintiff believed were connected to the events at Glaxo on 22 June and 19 July 1994. Plaintiff indicated to Dr. Darcey that he had been exposed to formaldehyde.
11. Dr. Darcey found plaintiff's complaints were not causally related to the prior incidents at Glaxo and that any exposure he may have had to formaldehyde or ammonia would not be responsible for his complaints of muscle pain in October 1994. Dr. Darcey likewise did not believe plaintiff had a significant exposure which could have caused any post-traumatic stress disorder.
12. Plaintiff has also been evaluated by Dr. Scott Spillmann, an occupational medicine specialist, who saw him on 27 June 1995. Plaintiff made numerous complaints including chest pain, sore throat, left arm pain, left leg pain, left eye pain, and sensations in his teeth and face. Dr. Spillmann found no causal connection between plaintiff's complaints and the prior apparent chemical exposure. He also found it unlikely that either alleged exposure was so traumatic as to cause plaintiff to develop post-traumatic stress disorder and he did not think plaintiff had post-traumatic stress disorder.
13. Plaintiff has also been evaluated by two psychiatrists, Dr. Sheldon Chase and Dr. C. Thomas Gualtieri. The Full Commission gives more weight to the testimony of Dr. Gualtieri, as it is more consistent with and supported by the other evidence. Although Dr. Gualtieri found plaintiff has significant problems such as anxiety and depression, he does not believe these are related to the alleged exposures. Dr. Gualtieri does not believe plaintiff has post-traumatic stress disorder (PTSD). Like Dr. Spillmann, Dr. Gualtieri did not believe plaintiff's alleged exposure was a significant trauma that would lead to PTSD.
14. Dr. Gualtieri also found some indications of possible malingering consistent with plaintiff's behavior as observed and noted by Deputy Commissioner Cramer. During the hearing before Deputy Commissioner Cramer, plaintiff made a point to cover his mouth and nose with a paper filter-type mask, holding it with his hand, as if to make it obvious rather than banding it around his head. At a break in the hearing, plaintiff removed the paper filter and smoked a cigarette. Plaintiff did not appear to be in any distress. His testimony as to his multitude of physical complaints was contradicted by his behavior.
15. The evidence fails to establish that on 22 June 1994 or 19 July 1994, plaintiff was exposed to formaldehyde or ammonia, or any other hazardous chemical during his work for defendant at Glaxo. At most, it appears plaintiff was briefly exposed to a material, possibly biological, which caused temporary minor respiratory distress. Any work related exposure to any substances plaintiff may have experienced on the dates in question is not causally related to his subsequent complaints of muscle aches, facial sensations, skin sensitivity, or "spots" on his head.
16. The evidence fails to establish that plaintiff suffers from post-traumatic stress disorder or any other psychological problems causally related to the events of 22 June 1994 and/or 19 July 1994.
 ***********
Based upon the foregoing findings of fact the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On or about 22 June 1994 and again on 19 July 1994, plaintiff sustained an interruption of his normal work routine when, on each occasion, he was exposed for less than one minute, to a material, possibly decomposing biological matter, which caused temporary respiratory distress. Plaintiff has failed to prove, by the greater weight of the evidence, that on either occasion, he was exposed to any chemical substance which resulted in injury to plaintiff. G.S. § 97-2(6); G.S. § 97-53.
2. Other than temporary respiratory distress, which was resolved within two to three hours on each occasion, plaintiff has failed to prove, by the greater weight of the evidence, that either accident resulted in compensable consequences. G.S. §97-2(6).
3. Plaintiff has failed to prove, by the greater weight of the evidence, that on 22 June 1994 and/or 19 July 1994, he suffered exposure to a chemical which caused the development of a compensable occupational disease. G.S. § 97-53.
4. Even if it should be determined that the evidence supports a finding of fact that plaintiff was briefly exposed to traces of formaldehyde and/or ammonium chloride or some other chemical on 22 June 1994 and/or 19 July 1994, the evidence still fails to support a conclusion that such exposure resulted in injury to plaintiff, other than temporary respiratory distress, which had resolved in less than two to three hours. G.S. § 97-53.
5. Defendant is responsible only for the initial medical treatment rendered to plaintiff on or about 19 July 1994 and initial assessments done by the physicians, as well as any independent medical opinions requested by defendant. Any other medical treatment has not been shown to be causally related to any accident or incident on 22 June or 19 July 1994, arising out of and in the course of plaintiff's employment. G.S. § 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay for plaintiff's initial medical treatment on 19 July 1994, as well as the initial assessments, both physical and psychological done to assess plaintiff condition, as well as any independent medical examinations requested by defendant, but are not responsible for other medical treatment for plaintiff which is not causally related to any injury by accident or occupational disease.
2. Plaintiff's claim for benefits is otherwise DENIED.
3. Defendant shall pay the costs.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/ ____________ THOMAS J. BOLCH COMMISSIONER